## In re will of GEORGE S. BULLIVANT.

[Argued November 30th and December 2d, 1912.    Decided November. 1913.]

1. A testator after he had subscribed his name to a will, desired to insert a bequest; an interlineation to effectuate that intent was made, the will was then published, and the signature acknowledged in the presence of the witnesses, who thereupon subscribed their names as witnesses in the presence of the testator.—*Held*, that the will with the interlineation was signed by the testator.

2. A testator may adopt as his sign his own sign-manual made at the foot of his will before its completion. His acknowledgment makes it his signature to the will as it stands.

On appeal from a decree of the prerogative court.

*Mr. Franklin W. Fort (Messrs. Fort & Fort* on the brief), for the appellant.

*Mr. Edwin A. Rayner,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

We agree with the judge of the orphans court that the evidence shows a publication of the will. The only legal question involved in the case is whether the will was signed by the testator as the statute requires. What happened was that the testator, after he had subscribed his name, desired to insert a bequest of an automobile. An interlineation to effectuate that intent was made, the will was then published, and the signature acknowledged in the presence of the witnesses, who thereupon subscribed their names as witnesses in the presence of the testator. The point made is that the testator never subscribed his name to the will as completed, and the question is whether his acknowledgment of his own sign-manual amounts to a signing. The statute makes a dis-

tinction between the act of the testator and the act of the sub-scribing witnesses. *Comp. Stat. 5867 pl. 24.* He must sign; they must subscribe their names. Under the English statute be-fore 1837, there had been several decisions as to the meaning of the word "sign." A mark; initials, a wrong or assumed name, an engraved die, were all held to suffice. *1 Jarm. 201 ff. (Randolph & Talcott's ed.)* ; *1 Wms. Ex. (6th Am. ed.) 103.* In short, the construction put upon the word "signed" by the courts is the original meaning of a signum or sign, rather than the derivative meaning of a sign-manual or handwriting. This construction harmonizes with the change in the language of the statute when it came to the subscribing witnesses who are required to subscribe their names. This signum must be the sign of the testator as Chancellor Zabriskie held. *In the matter of Gertrude Rice Mc-Elwaine, 18 N. J. Eq. (3 C. E. Gr.) 499.* The question, there-fore, comes to this: Can a testator adopt as his sign his own sign-manual made at the foot of the will before its completion? We see no reason why he may not do so as well as adopt a mark, an engraved signature, or a false name, as held in the cases cited by Jarman. The important thing is that the will should be com-plete at the time of publication and attestation. As Justice Gray said in *Chase v. Kittredge, 11 Allen 49* (at *p. 64*) : "A testator may alter his will as he pleases at any time before it is formally attested. He may write it out in full and sign it, and it has no effect as a will until duly attested. It is unimportant whether it is or is not signed by the testator until it is produced to the witnesses. It is only important that it should be his will in writ-ing and signed when they attest and subscribe it; and it is equally his will in writing, whether signed in their presence or at some previous time." This opinion was cited by us on another point in *Lacey v. Dobbs, 63 N. J. Eq. (18 Dick.) 325,* without any suggestion of disapproval. It may be conceded that under the circumstances of this case the will offered for probate was not signed by the testator within the meaning of the statute until he adopted his own handwriting as his signature to the will by ac-knowledging it to be such in the presence of the witnesses. That acknowledgment made it his signature to the will as it stands.

As we said in *Ludlow* v. *Ludlow, 36 N. J. Eq. (9 Stew.) 597* (at p. *600*), the statute of 1851 made the acknowledgment of the signature proof of signing. The opinion of Chancellor Zabriskie in the *McElwaine Case* is not to the contrary. There the signature had been made by another, the testatrix "did not, after her name was signed, touch the paper, or say that it was her signature, and there was no proof that, after her name was signed, she acknowledged or declared that it was her will." The ordinary in that case was dealing with a signature made by another and he properly dwelt on the danger involved, and intimated that even that would suffice if done in the testator's presence and by his express direction. The danger dwelt upon by the ordinary in that case is, however, no greater than the danger of opening the door to parol testimony to prove that the sign-manual of the testator duly acknowledged as his signature was not signed by him to the completed paper on which it is written. What Chancellor Zabriskie feared was the lack of any act by the testator, but in this case we have such an act. It would have been mere idle form for him to write his name again. He must indeed adopt by his acknowledgment the name already written as his sign to the then completed will; but that also he did. Later, Chancellor McGill, in *Frits* v. *Turner, 46 N. J. Eq. (1 Dick.) 515*, held that the signature was good, although the testator's hand was guided by the draughtsman and it was a disputed question whether the testator could write at all. "The important question," he said, "is whether the testator had the purpose to write his name or make his mark upon the will as his signature to it, and whether, in fact, he did make such a physical effort to sign as resulted in a mark upon the paper by which the paper could be identified." While the decree was reversed (*49 N. J. Eq. (4 Dick.) 348*), it does not seem to have been on any ground that affected the chancellor's view on this point, for if that had been the case it would have been quite unnecessary for the court of errors and appeals to send the case back for further testimony; the undisputed facts would have been fatal to the validity of the will.

If we look to the analogies of the law, we are sustained in our view. A promissory note must be signed, and a deed must be

sealed. If it could be said that these requirements were not complied with in cases where the instruments were altered, all the discussion in the books as to the distinction between material and immaterial alterations, and between alterations by a party and alterations by a stranger, would have been idle, since it would have sufficed to say that the document produced has never been signed or sealed. Has it ever been suggested that a promissory note ceased to be such because altered by the maker after he had put his name thereto, or that a deed was not sealed because after the seal was affixed an alteration was made by the grantor? In these cases the instrument speaks from the time of delivery; a will becomes effective by acknowledgment of the signature and publication.

For these reasons we think the will offered for probate was signed by the testator as the statute requires, and the decree is affirmed. The case, however, is a proper one for allowance of costs out of the estate. .

GARRISON, J. (dissenting).

I think that the signing of his will by a testator must, under our statute, be the signing of his written will. The statute calls it the "signature" of the testator, and whether it be his sign, mark, signum or sign-manual, such testamentary act must take place in the order named in the statute, and be after the writing of the will. It is this "signature" that the testator may acknowledge to the witnesses in case it was not made in their presence; such acknowledgment is therefore a substitute in the alternative for the visual act of the witnessing of the making of the signature. If the witnesses have witnessed the signing by the testator an acknowledgment is not authorized by the statute, and, if it were, would not advance the transaction beyond what such witnesses had in fact witnessed. In fine, the acknowledgment merely identifies the testator's signature as of the time when, had the witnesses seen him make it, they would have witnessed the act that is thus acknowledged solely because they did not so witness it. Whether witnessed or acknowledged the testamentary act in question remains identically the same. The present case,

therefore, by force of the testator's acknowledgment of his signature, stands precisely as if the witnesses had seen him make it, in which case they would have seen him sign his name to a paper that was not his will. Such a signing, whether it be witnessed or acknowledged, is not the statutory signing by the testator of his written will; for a will is not written until it is completed any more than it is before it is commenced. A will thus executed in the inverse order of the statute, *i. e.*, first signed, then reduced to writing, and such previous signature then acknowledged, is no more a compliance with the statute than if the witnesses had witnessed the testator write his name on a piece of blank paper on which over his name his will was afterwards written. In fine, if a testator has not in fact signed his written will no acknowledgment he can make can alter that fact or supply that deficiency, for it is only his signature he can acknowledge—not his will; and in the last analysis the fundamental error is that of construing the statute as if it authorized the testator to acknowledge his will, *i. e.*, to adopt as his will a writing that had not been signed by him. The proper construction of the statute stated in a single sentence is that the acknowledgment is a substitute for the circumstantial act of the witnesses, *i. e.*, their actual witnessing of the writing of his signature by the testator in case they have omitted so to do; but that it is not a substitute for the essential act of the testator, *i. e.*, the signing of his written will which in no case can he omit to do. Being unable to adopt a construction of the statute that varies its plain terms and which by dispensing with the signing by the testator of his written will dispenses with all of the safeguards thus thrown around this essential testamentary act, no course is open to me but to deny that the will in the present case was properly admitted to probate.

*For affirmance*—SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE—9.

*For reversal*—THE CHIEF-JUSTICE, GARRISON—2.